Freeman JONES, Plaintiff,

v.

Thomas P. ROTH, Gilberto Romero, Salvador A. Godinez, James M. Schomig, and Michael O'Leary, Defendants.

No. 91 C 6013.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 18, 1996.

Mary Kay McCalla, Andrew Stuart Potts, Hopkins & Sutter, P.C., Chicago, IL, for Freeman Jones, Ricky Jennings, Albert Welton, III.

Freeman Jones, Dixon, IL, Pro Se.

Ricky Jennings, East Moline, IL, Pro Se.

Albert Welton, III, Joliet, IL, Pro Se.

Jonathan Clark Green, Asst. Attorney General, Illinois Attorney General's Office, Chicago, IL, for Thomas Roth, James Schomig, Gilberto Romero, Michael O'Leary.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Freeman Jones, brought suit against the defendants alleging that they violated his rights under the Religious Freedom Restoration Act (RFRA). The defendants, all of whom are prison officials at the Stateville Correctional Center in Joliet, Illinois ("Stateville"), have moved for summary judgment on Mr. Jones' remaining claim for injunctive relief to expunge his record of a disciplinary citation. For the following reasons, the motion is granted.

### Background

The following facts are undisputed. In March, 1991, Mr. Jones was incarcerated at Stateville in the F-house cell block. As a Muslim, Mr. Jones observes the Islamic month of Ramadan. During Ramadan in 1991, Mr. Jones, along with the other Muslim inmates at Stateville, was given a morning meal and the opportunity for group worship and prayer in the dining hall. The dining hall, however, has no bathrooms, and the tables in the dining hall are bolted to the floor and cannot be moved or rearranged.

In the early morning of March 22, 1991, Mr. Jones was returning to F-house from the dining hall where he had a presunrise meal and the opportunity for group prayer. Upon his return to F-house, Mr. Jones and several other prisoners went to the flag area in that cell block to conduct their morning prayers for Ramadan. On that same day, Mr. Jones was issued a citation related to his conduct in the flag area. Based on this citation, the Adjustment Committee of the prison found Mr. Jones guilty of disobeying a direct order of a prison officer. As a punishment for this violation, Mr. Jones was denied access to the prison commissary for three months.

Based on these events, Mr. Jones sued several prison officials, including Thomas P. Roth, who was the warden at the time, for damages and injunctive relief. Through a series of earlier orders, I granted the defendants qualified immunity on the damages issue, and I dismissed the other plaintiffs who had joined in this case with Mr. Jones because their remaining claims were moot in light of the changes in procedures at Stateville. Mr. Jones' claim for injunctive relief, however, is still before the Court because he seeks to have his record expunged of the citation issued to him on March 22, 1991. The issue presently before the Court on the defendants' motion for summary judgment is whether or not the issuance of this citation violated Mr. Jones' religious freedoms under RFRA.

### Legal Standard of Review

A court may award summary judgment to the moving party only when there is no genuine issue of material fact, and that party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue of material fact exists when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). In considering the motion, all reasonable inferences must be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### Applicability and Requirements of RFRA

■ As a preliminary matter, I first must determine whether RFRA applies to this dispute at all. The defendants argue that Mr. Jones was issued the citation for disobeying a direct order to return to his cell after the prayer session. They claim that the citation was not issued in connection with any religious practice or conduct in which Mr. Jones engaged, and therefore RFRA is not implicated. Mr. Jones contends, however, that because the dining hall was not a proper space for group prayer, and the defendants refused to accommodate him with a different location, he was forced to pray in the flag area of F-house which was a proper space. Hence, he argues that he was given the citation for his act of praying in the flag area. Because I must draw all reasonable inference in favor of the non-moving party, I will infer that at least part of the motivation behind the citation issued to Mr. Jones was his act of praying in the flag area. Therefore, RFRA applies.

■ RFRA requires that federal courts apply a new standard of review when assessing the legality of actions taken by the government which burden religious activity and conduct. RFRA provides that "government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b) (1994). Under RFRA, a plaintiff must show that the government has created a substantial burden on the plaintiff's exercise of religion. *Mack v. O'Leary*, 80 F.3d 1175, 1180 (7th Cir.1996). Once a substantial burden has been shown, the burden of proof shifts to the government to demonstrate that it has a compelling interest in imposing the burden and that the

interest could not be protected in some less restrictive manner. *Id.* If the government carries its burden, RFRA has not been violated.

### Substantial Burden on Jones' Religion

The Seventh Circuit recently undertook an in-depth examination of the meaning of "substantial burden" under RFRA. It concluded that a substantial burden is "one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Mack*, 80 F.3d at 1179. The Seventh Circuit was careful to note that its definition of "substantial burden" was a broad one which encompassed more than those religious practices which are mandatory but also those that "are important to their practitioners, who would consider the denial of them to be a grave curtailment of their religious liberty." *Id.* Whether a religious practice is mandatory or not "adds weight to, or subtracts weight from, the substantiality of the burden. But it does not conclude the issue." *Id.* (citations omitted).

In the present case, the defendants have presented an affidavit from the chaplain at Stateville who asserts that many of the religious practices that Mr. Jones wished to perform for Ramadan, such as group prayer and *wudu*,[1] are not mandatory. Therefore, they argue that none of the restrictions at Stateville imposed on those practices were a substantial burden. In contrast, Mr. Jones swears that these practices are central tenets of his religious beliefs and that the defendants substantially burdened those practices by limiting him to the use of the dining hall for observance of Ramadan.

■ Ordinarily, these competing affidavits might create a genuine issue of fact which would preclude summary judgment. Yet in this case, even if Mr. Jones' religious practices are not mandated by Islam, that fact does not resolve the substantial burden issue. *Mack*, 80 F.3d at 1179. The existence of

---

1. *Wudu* is a ceremonial cleansing procedure which is done for purification. It consists of washing the lower legs and feet, the hands, forearms, face, nostrils, neck, and ears.

alternatives to group worship and *wudu*, as specified in the chaplain's affidavit, does not mean that the defendants' actions did not place a substantial burden on Mr. Jones' practice of his religion.[2] The practices of ritual cleansing and purification and group worship are common to many major religions. Although such practices may not be mandated by those religions, the practices themselves are religiously motivated, and restrictions on the performance of those practices do constitute a substantial burden. *See Sasnett v. Sullivan,* 91 F.3d 1018, 1022 (7th Cir.1996) (finding restriction on the wearing of a crucifix to be a substantial burden because such conduct is religiously motivated even if not required by the laws of Christianity). Hence, drawing all reasonable inferences in his favor, Mr. Jones has demonstrated that the defendants' actions substantially burdened his religiously motivated conduct.

### Government's Compelling Interest and Least Restrictive Means

■ The burden of proof now shifts to the defendants to demonstrate that they had a compelling interest in substantially burdening Mr. Jones' religious practice and that they did so using the least restrictive means. The defendants argue that the restrictions placed on Mr. Jones' religious practice were necessary to maintain safety, security and order within the prison. For example, the tables in the dining hall are bolted to the floor and cannot be rearranged because otherwise "they would be formidable weapons in a prison riot. . . ." *Mack,* 80 F.3d at 1180. Moreover, the restriction on group assemblies to certain times and locations is also necessary to prevent the possibility of riots or gang meetings. *See Jones v. North Car-olina Prisoners' Union,* 433 U.S. 119, 129, 97 S.Ct. 2532, 2539–40, 53 L.Ed.2d 629 (1977). These security considerations:

> are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). No substantial evidence has been presented by Mr. Jones to prove that the defendants exaggerated their response to the security concerns at Stateville.[3] Consequently, the defendants have shown that their conduct was based on the need to maintain order and security at Stateville, and such concerns are compelling governmental interests. *Sasnett,* 91 F.3d at 1022; *Mack,* 80 F.3d at 1180.

■ Finally, *Mack* also compels a holding that defendants' solution satisfied the requirement that they use the least restrictive means to promote their compelling interest in prison security. Mr. Jones and other Muslim inmates were permitted to observe Ramadan and engage in group prayer. "Prison officials do not have to do handsprings to accommodate religious needs of inmates. : : ." *Mack,* 80 F.3d at 1180. The defendants gave Mr. Jones an opportunity to practice his religion and observe its rituals. They are not required to make that opportunity into one that most pleases and satisfies inmates. Thus, the defendants employed the least restrictive means to allow group prayer

---

2. The chaplain's affidavit described *tayimum,* which is an alternative practice to *wudu* and is used when no water is available. The wording of the chaplain's affidavit implies that *wudu* is the preferred practice and that *tayimum* is a second-best alternative. In Mr. Jones' practice of Islam, he sought to perform the preferred practice of *wudu,* and a restriction on that choice which forces him to choose a second-best alternative is a substantial burden.

3. Mr. Jones has provided evidence that the defendants permitted prayer sessions to occur in other buildings and locations after this incident. Based on this evidence, he argues that the defen-dants had no compelling interest in restricting him to the confines of the dining hall for group worship. Mr. Jones, however, has confused the issue in this case. Mr. Jones' remaining claim in this case seeks injunctive relief to expunge his record of the citation, not to change the policies at Stateville. The defendants' policies on religious worship already have been modified, and any claim that Mr. Jones had on this basis is now moot. Instead, the issue here is the defendants' security concerns and responses to the problem of unauthorized gatherings of prisoners for religious or other purposes.

and worship while still maintaining order and security.